## LOUISA A. GREEN v. JOSIAH W. BEGOLE.

### *Equity—Specific performance.*

"In order that a court of equity shall exercise its power to decree a specific execution where there has been a part performance, the contract itself must be clear, certain, and unambiguous in its terms, and must either be admitted by the pleadings, or proved with a reasonable degree of certainty to the satisfaction of the court. If, therefore, upon all the evidence given by both parties, the court is left in doubt as to the entire contract, or even as to any of its material terms, it will not grant the remedy, although a partial performance of something has been sufficiently proved."

Appeal from Genesee. (Newton, J.) Argued May 8, 1888. Decided June 15, 1888.

Bill for specific performance. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*W. C. Green* (*J. E. Simonson,* of counsel), for complainant.

*George R. Gold,* for defendant.

CHAMPLIN, J. The bill of complaint is filed in this case to enforce the specific performance of an agreement alleged to have been made between defendant and his son, Frank C. Begole.

Frank C. Begole died in Florida on April 1, 1877, leaving a wife, the complainant in this suit, and two children, surviving him. He owned real estate in Wichita, Kan.; also in Wisconsin and Michigan.

The complainant alleges that her husband, Frank C. Begole, desired and intended, at the time of his last illness, to leave and give all of his said real estate to her, in consideration of the love and affection he bore for her, and to provide for her maintenance and support, and to enable her to bring up and educate their surviving children, as well as to recompense her in some degree for the hardships and privations to which she had been subjected during the period of their married life; that having full and entire confidence in the honor and integrity of the defendant, and being aware her husband could live but a very short time, and the defendant, being advised of the intention and desire of her said husband, told him that such deed directly from husband to wife would not be valid under the laws of Wisconsin—

"He then and there, at the request of the defendant, deeded and conveyed said lands in Wisconsin and Michigan to said defendant, under and in pursuance of the express understanding and agreement by and between said defendant and said Frank C. Begole, then and there made and entered into, that he, said defendant, in consideration of the premises, would faithfully execute and complete said contract, and as soon as practicable thereafter convey said lands to your oratrix; and vest her with the legal title thereto."

The defendant answered, denying such contract, and denying any agreement to convey such lands to complainant. He admits that his son, in his last illness, just prior to his death, executed a deed to him, conveying to him the title of his lands in Wisconsin and Michigan; but he says it was so

conveyed to him in trust to hold for the use and benefit of the children then living of said Frank C. Begole.

The testimony was taken in open court as upon a trial at law, and the only witness to prove the contract alleged in the bill of complaint was the complainant herself. Facts and circumstances were introduced by complainant, which it is claimed by counsel for complainant tend to corroborate her statements. The contract which she seeks to enforce she claims was made in Florida just prior to her husband's death. The only evidence of such contract is the testimony of complainant, in which she states the contents of a letter which she says she destroyed a short time previous to her marriage with her present husband, and some admissions which she testifies defendant made to her she thinks in the presence of Mrs. Begole, the defendant's wife.

Complainant testifies that her husband and herself, with their family, resided at Wichita, Kan., where he owned nine or ten acres of land; that while her husband was in Florida, whither he had gone for his health, she received a letter from the defendant, who was with his son in Florida, stating that her husband could not live, and that he wished to put all his property in her hands, as he wanted to save the expense of administration, and he trusted everything to her, and defendant wanted she should get a deed of the Wichita property, and send it to him, and he would send and get a deed of the Wisconsin property and the Michigan property,—especially the Wisconsin he mentioned,—and have the deed made out to her; that, after she received the letter, she did have drawn up a deed of the Wichita property, and forwarded it to defendant in Florida, and it was executed by her husband, Frank C. Begole, and was afterwards delivered to her.

She further testified that, after the death of her husband, she, at the request of the defendant, came, with her family, which consisted of two boys, to reside in the defendant's family at Flint, Genesee county, in this State, and she resided in

his family, and was treated as a daughter by the defendant, until her second marriage, which occurred in 1880; that she came to reside with defendant sometime in June, 1877, and sometime after her arrival, and during the summer sometime, she had a conversation with defendant about the Wisconsin lands, in which—

"He said he found in trying to make a deed, according to the laws of Wisconsin, a man could not deed lands directly to his wife; he would have to deed them to her through a third person; so they were deeded to him to be deeded to me. I don't remember of his saying anything about the lands in Genesee county."

This is all the testimony in the case respecting the terms of the contract set out in the bill of complaint.

Patents and title deeds were introduced in evidence, showing that the title to the lands in controversy was in Frank C. Begole, and the deeds executed by him in Florida, one conconveying 160 acres of land in Michigan, and the other the Wisconsin lands, of about 1,000 acres, to defendant, Josiah W. Begole. The deeds were absolute in form, and contained no trusts expressed upon their face. Eighty acres of the one hundred and sixty acres in Michigan had been sold under a land contract by Frank C. Begole in his life-time, and $200 remained unpaid upon it. The balance of the Michigan land was sold under land contracts by defendant after Frank C. Begole's death, and prior to the complainant's second marriage. These contracts were made between the defendant and the purchaser, and the purchase money was payable to defendant.

The complainant received $5,000 life insurance, $700 of which was used by her consent in paying a note which she had given to some person in Wichita, and the expenses of the last sickness and funeral expenses of her husband, $300 she reserved for her own use, and the balance of $4,000 she loaned to defendant, and took his note therefor, with inter-

est. There was some other personal property belonging to the estate of her deceased husband, of which complainant received her share. She testifies that defendant managed all her property and business for her, and paid over to her from time to time the moneys which he received upon the land contracts before spoken of, and told her that the contracts were hers. In paying over these moneys, he delivered to her, upon one occasion, a tax receipt for taxes paid upon some of the contract lands as so much money. In 1879, in writing to a Mr. Eldredge respecting the pine land which defendant owned in Wisconsin, he used this language:

"But will make you an offer to sell my part for five dollars per acre, and my son's wife's for three dollars per acre."

A letter is mentioned in the testimony as having been written by Mrs. Begole, the defendant's wife, to her husband while he was in Florida; and reference is made to a certain indorsement thereon in the handwriting of the defendant ; but neither the letter nor the indorsement was offered or read in evidence, and we are left to spell out their import as best we may from the reference to them in the testimony. It appears that the letter was dated March 18, 1877, and was the letter sent by Mrs. Begole to her husband which contained the deeds of the land in Wisconsin and in Michigan. What was indorsed upon the letter by defendant does not appear.

At the time of the death of Frank C. Begole, two children were left surviving: Paul H., an infant, who died at Flint about July 28, 1877, at the age of one year or thereabouts, and Josiah W., aged six years. After the second marriage of complainant, administration was had, in Genesee county, upon the estate of Frank C. Begole, upon the application of complainant, and Russell Bishop was appointed administrator. This was in 1880. Up to this time, complainant had acted as natural guardian of her son, Josiah W. About the time of the appointment of an administrator, the defendant

was appointed guardian of the estate of Josiah W. Begole, the son of Frank C. Begole. As such guardian, he received from the administrator $3,829.47. He rendered accounts to the probate court as such guardian, and has never included therein the lands which he claims to hold for the benefit of his grandson; nor has he charged his ward with the moneys paid out for taxes or other expenses of the trust.

I have now stated all the facts and circumstances which it is claimed by complainant's counsel tend to support the testimony and theory of complainant in reference to the contract which she asks to have specifically enforced.

An attempt was made to show admissions of defendant to corroborate her theory, made when defendant was called upon by Judge Green and Russell Bishop, when Judge Green, at complainant's request, asked the defendant to convey the Wisconsin lands to complainant. Judge Green, a disinterested person, was not called as a witness; but Russell Bishop, who is a surety for costs in complainant's suit, testifies to a conversation with defendant had upon that occasion. But his testimony lends no aid to complainant's case. He testifies that defendant stated that the deeds were made to him for the benefit of his son's family, which is quite different from the contract claimed by complainant. Such is complainant's case.

The testimony of defendant denies emphatically that of complainant with respect to the contents of the lost letter which she says she received at Wichita; and he denies also stating to her, after she removed to Michigan, that he had taken the deed in his name to deed over to her. He states that he suggested to his son to convey the lands in each state to her, to avoid the expense and trouble of probate proceedings, but that his son refused to do so, and said he wanted to deed the Wichita land to his wife, which, together with the life insurance, would be what he wished her to have, but the Wisconsin and Michigan lands he wanted to deed to defend-

·ant for the benefit of his children; that the Wisconsin lands
and Michigan lands were wild lands, and she would not know
what to do with them, and he wanted defendant to take a
deed of ‟them for the benefit of the children; and he testi-.
fies that it was so done.   He further testifies that he so
informed the plaintiff a short time after she came to live
with him in Michigan.   In this he is corroborated by his
wife's testimony, so far as the Wisconsin lands are concerned.
She does not remember of the Michigan lands being men-
tioned.

. Defendant admits writing the letter to Eldridge, and says
that the expression was used to designate the lands which
Eldridge knew formerly belonged to his son.  He admits
handing over to her the proceeds of the contract lands, less
taxes; and says he did so because he regarded her as one of
the family, and to enable her to clothe her son, and without
any special reference to the way he held it.   He admits that,
up to the time of her second marriage, the business was done
in a very loose way; neither party keeping any account of the
moneys received or paid.

It appeared that the total value of the Michigan land was
about $800, and one-half of it had been sold, before the
son's death, for $400, and $200 had been paid to the son
thereon.   The complainant testified that she did not think
she had received, on account of these contract lands, to
exceed $100.

He explains that he did not include the lands held in trust
by him in his probate accounts because it was a distinct mat-
·ter, and which he regarded as not proper to be included.
He states that the reason why the trust was not expressed in
the deed was because of the advice of a lawyer who was
called in at the time the deed was executed, who informed
them that a trust deed would not be good executed in Flor-
ida.   If this is so, it is a sad commentary upon the legal
ability of the person assuming to give such advice.   What-

ever the reason, the fact appears that it was not done. The deeds are absolute, and contain no expressed trust. The omission is unimportant under the claim made by the complainant in her bill. She does not charge that the deeds were obtained by defendant for the purpose of defrauding her, but under a contract made between defendant and his son that he should execute a deed of the lands therein described to her.

He denies the contract, or that he ever agreed or promised, or that his son Frank C. ever intended or requested, that he should convey the lands to her, or hold them for her benefit, but he testifies the deeds were executed to him by the express request of his son for the benefit of his children, and that he now holds the lands subject to said trust.

It is laid down by Mr. Pomeroy, in his work on Specific Performance of Contracts, in section 136, and supported by a large number of authorities, that,—

"In order that a court of equity shall exercise its power to decree a specific execution where there has been a part performance, the contract itself must be clear, certain, and unambiguous in its terms, and must either be admitted by the pleadings, or proved with a reasonable degree of certainty to the satisfaction of the court. If, therefore, upon all the evidence given by both parties, the court is left in doubt as to the entire contract, or even as to any of its material terms, it will not grant the remedy, although a partial performance of something has been sufficiently proved."

Here the contract has not been admitted by the pleadings, nor can it be said that it has been proved with a reasonable degree of certainty. On the contrary, I think it has been disproved.

In looking at the probabilities, it is proper to consider the circumstances under which the deeds were executed. Frank C. was upon his death-bed, and the dispositions he was making of his property were of a testamentary character. He had provided, in a measure, for his wife, by a life insurance.

He conveyed to her the homestead in Wichita.  He left two children.  Is it likely that he would disinherit them, and give all of his property to his wife?  Is it not more likely that, having thus provided for her, he should make some provision for his infant children?  The testimony shows that the Wisconsin lands cost $1,500, and that no purchasers had been found at $3 an acre.  The value of the Michigan lands has been mentioned above.  These facts and circumstances I think tend very strongly to corroborate the defendant's testimony as to the purpose for which the deeds were executed, and as strongly to disprove the alleged contract set up by the complainant.

The decree of the circuit court must be affirmed.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred. LONG, J., did not sit.